May it please the court. Good morning, Your Honor. Zulu Ali on behalf of the petitioner. The facts are relatively brief in this case. The petitioner filed applications for asylum, withholding of removal, and relief under the Convention Against Torture on October 17, 2019. And on November the 27th, 2021, there was a written order to file proof of biometrics, declarations, and criminal convictions by January the 27th, 2020. On February the 21st, the immigration judge of February 21st of 2020, the immigration judge deemed petitioner's applications abandoned and ordered petitioner removed. And he immediately filed a motion to reconsider the judge's decision on February the 21st, 2020, which was denied on March the 20th, 2020. And the Board of Immigration of Appeals denied that appeal on October the 15th, 2021. Well, is your key issue that you're claiming your client never got the instructions of how to do the biometric? Is that the essence? I'm sorry, Your Honor. Is that the essence of your argument here or is there something else? I see it as two issues, Your Honor. I think that there is one issue regarding the fact that there was not any instructions that was received by the petitioner. And I think that the second issue is that the written order falls short of what is required as far as the type of advisement and notice that the immigration judge has to provide to a respondent in removal proceedings. If looking at the written order, the issue with the written order is that it basically it does state that he has to, under a section, there's kind of like several different sections of the immigration judge with regards to the notices of consequences. One of those, which states the proof of biometrics, complete declaration, all conviction documents, which basically alludes to the fact that those filings of those particular documents may be deemed waived. However, later on in the document, which would have been the appropriate advisement would be at the very bottom where it says that you're required to file the biometrics. And if you fail to do so, it would constitute an abandonment of your application. So that particular consequence, which is critical to the case of critical to anyone's case, was not at least marked in this particular order by the immigration judge. What's the record say? Which exact document are you looking at? Your Honor, I'm actually looking at the page 210, where it talks about the order of the immigration judge and notice of consequences of failure to timely file documents. And basically this form that was provided to the petitioner at the time marked certain provisions. However, it does not set forth the appropriate consequences, that being the abandonment of your application. So, counsel, one of the things I'm struggling with in this case is the burden of proof, and there's this presumption in our law. So on the record that we have before us, even though we don't have the transcript of the proceedings, there's indicia that the IJ did what he needed to do in terms of providing this information. We have the document you're referencing, where there's a handwritten notation about this specific thing. We have the IJ saying it happened in the IJ's decision, and there was one other thing, and now it's, oh, and then we have your client making an effort to meet the requirements. So that demonstrates that he has some knowledge that this is something that needs to be done. So those three things in the record indicate that this information and this notice was provided, where it's your client's burden to show that something didn't happen correctly, and where we have a presumption that immigration judges perform their functions properly. How can your client meet the standard? Well, I believe that, I mean, I think when we have to look at the record and the totality of the record and make a determination as to whether the DHS actually provided him with those instructions. I mean, I know that your Honor advises, and I think the BIA as well, assume that based upon the decision by the immigration judge that he was provided with the instructions. However, I guess that I would ask that the court, and I think that we would in some way consider the absence of anything on the record that would suggest that he was When you raised the transcript issue and the BIA responded to it, it specifically said you could go, your client could go and listen to the audio recording of these proceedings and raise needing the transcript to the BIA. There's nothing in the record that tells us that your client did either of those things. Did that happen? Did he go and listen to the transcript or to the hearing, the audio recording? I don't believe so, your Honor. Did your client request before the BIA, did he ask for the transcript of the hearing before the IJ when he went to the BIA? I don't believe so, your Honor. That's problematic, right, because the procedures for appealing to the BIA specifically allow petitioners to file a supplemental brief. So even, I mean, I was thinking about the timing. The BIA tells your client that listening to the audio recording tells him that at the same time, basically, I think that the BIA brief is being filed. And so I thought about, well, is that fair to say that he should go do that when he wouldn't have time to react and change his brief? But the procedures for the BIA allow somebody to file a supplemental brief. So had he gone and listened to the oral recording and found that there was something in there that supported his argument, he could have told the BIA that. But we don't have anything like that in this record. Yeah. And that is, I guess that is one issue. And as far as what would have been on the recording, of course, we don't have that. But I do want to, I guess at this point, I do want to emphasize the fact that we do have the order of the immigration judge and the notices of the consequences of failure to timely file the documents. So, and I think that there is clearly, at least from my perspective and the petitioner's perspective, that there are some critical due process issues because I think that the BIA is very clear about what is required when it, and one of those requirements is the fact that an abandonment of your application has to be conveyed to a respondent in a removal proceeding. And I think that reading the order of the immigration judge and the notices of consequences, I believe, fall significantly short of that. What's your best case of supporting your position on the facts here? I think the best case, Your Honor, of supporting the facts is the order of immigration judge. I think that the facially, I think looking at the order of the immigration judge with regards to the consequences of failure to file the documents, I would submit to the court is clearly, clearly falls short. I think that if abandonment is a potential consequence of not properly filing a document, I think that the court has an obligation to advise the petitioner of that. And I believe as we look at the order of the immigration judge, that isn't stated. In fact, it's completely not marked as one of the requirements or the consequences. Do you want to reserve the last minute of your time? If I can, Your Honor, yes, please. Thank you, Your Honors, and may it please the court. My name is Brandon Callahan on behalf of the Attorney General. I'd like to just start today by saying that Mr. Flores-Santana can't show that the agency acted arbitrarily, irrationally, excuse me, or contrary to law, and so the court should deny the petition. In having this discussion, I think it's important to distinguish that Mr. Flores-Santana is not making an argument that the agency committed any error of law. He's only making this argument that there was an error of fact about whether he received the required notifications. Well, but if in fact the petitioner did not receive the instructions of how to do the biometrics, that could be a due process violation, couldn't it? I think that's certainly a possible argument, Your Honor. I only point out that he's making a factual point to say that the case law says that the court's not empowered to reconsider the factual questions here, but only to ensure that the agency, I believe the language is, relied on appropriate factors and proper evidence. Right, right, but the BIA is required by law to have a meaningful review of the IJ's decision here. Yes, Your Honor. All right, and the key issue is, you know, Mr. Santana is saying that I never received instructions of how to fill out this biometrics form, and the government is saying, oh no, we did give you those instructions. Well, how would the BIA determine who's right without a transcript of what happened before the IJ? Certainly, Your Honor. I understand your point. I think that my response would begin with the burden of proof here, as Judge Forrest spoke to. It is, the burden lies with petitioner to demonstrate that there was an error in the proceedings. It's not on the government to show that everything happened as it was, as it should. A presumption does apply in this case. Additionally, I believe as the discussion with my colleague illuminated, Mr. Flores Santana is not presenting any evidence, in fact, that he, to support his bare assertion of non-receipt, he's not presenting any evidence to say that he really never got this instruction, or that the immigration judge never complied with her duties under the regulation. Well, I assume he's asserting that he never received those instructions, isn't he? He is asserting that, but there's nothing to support that bare assertion. By contrast, as the discussion with Judge Forrest illuminated, there is evidence in the record that he did instructions and that the immigration judge and the DHS counsel complied with the requirements of the regulation. Wait. What is it? Where on the record is there proof that he did? I think the first place where there's some evidence of that is in the order that my colleague was discussing with Your Honors at 210, the immigration judge's written order. We know that the issue of biometrics was discussed in this hearing. I think the most important piece of evidence, though, is the immigration judge's decision herself. Here I think it's important to note that the immigration judge who ordered the biometric submission on page 210 was Judge Dorfman. Judge Dorfman is also the immigration judge who found that Mr. Flores-Santana had abandoned his claim. Judge Dorfman knows what she said to Mr. Flores-Santana. She knows what happened in her courtroom. So her decision is evidence supporting the fact that he did receive these notices and that the regulation was complied with. What about, you know, there's this case of, I don't know how to, S-I-O-N-G, Siong, V-I-N-S, from the Ninth Circuit, 2004. Wasn't there something similar? There was a faulty translation issue and the BIA made the decision without the benefit of a transcript, and this court reversed. Yes, Your Honor. Unless I'm mistaken, I believe that that case involved an appeal of the immigration judge's decision, not a motion for reconsideration. And that's where there was supposed to be a transcript involved in Siong. Here, we followed all the board's procedures about preparation of a transcript. And as the discussion with my colleague illuminated, he could have argued that a transcript was necessary. He failed to exhaust that argument. He did make a statement in the record on page 83 that a transcript, I believe the language is, could be helpful to the board. But when the board responded that their procedure was not to prepare a transcript and they informed him that he could go listen to the hearing, I believe he could have had a transcript made himself. That's not in the board's letter, but I believe that's possible. Why doesn't the board provide transcripts in this context? Because, Your Honor, I think that there's a lot of situations where a transcript of the hearings would waste the public's resources, honestly. Cases like changed circumstances, questions, reconsiderations based on errors of law, these simply aren't relevant, or I should understand that. So there may be a lot of situations where it's not material. But here, it would be. It is material because the very issue is, did or did not the IJ and the DH, you know, did they advise the client, the petitioner of, you know, his instructions to fill out the biometrics? And how does the BIA determine that if they don't hear or see what happened before the IJ? I mean, the IJ recalls, oh, I did give them the instructions. Well, he says, you didn't. And how do we determine that without a transcript? Yes, Your Honor. I think that your question illuminates a very important point here, which is that in order to accept any amount of Mr. Flores Santana's bare assertion of non-receipt, you have to also accept that the immigration judge is affirmatively misrepresenting what happened in her courtroom. Or maybe just, well, I don't know if it's lying. No, it may just be mistaken. I mean, she may handle 50 cases a day on a master calendar or, you know, I mean, sometimes people do miss, you know, make mistakes or don't remember correctly. Certainly, Your Honor, that's certainly possible. But that's where I think the presumption of regularity comes in here. There is a presumption, as Judge Forrest discussed, there is a presumption that the immigration judge properly discharged her duties. I think that applies in a couple places. First, it applies to the immigration judge complying with the requirements of 1003.47 to provide the instruction and ensure, I think the presumption applies to DHS counsel as well, that they provided the instruction as they're required to do under the regulation. But it also comes back in the way that the immigration judge discharged her duties to decide the case. So I think that there's a presumption here, and we have no clear evidence to rebut any presumption of regularity in either place. I also think that any discussion about why didn't the board prepare a transcript, it is obviously, it would be a relevant document. But that argument shifts the burden back onto the government. It suggests that the government carries a burden to demonstrate that the proceedings happened as they were supposed to, and that the presumption of regularity hasn't been rebutted. Are you aware of any cases where the type of evidence that we have here, something like a declaration by a petitioner, was sufficient to overcome the presumption of regularity? I am not, Your Honor. I think that Your Honor's question gets to another salient point here, which is that what exactly does Mr. Flores-Santana's statement, what exactly is it? It's not an affidavit. The court's case law is clear. I cite to cases Correa-Rivera, which is 706 F3D 1128, says that an affidavit is a statement attested to before a notary and under oath. That's not what we have here when he says he didn't receive the instruction. We just have a statement that he's making this assertion under penalty of perjury. That's where I would direct the court to Robbins v. United States, 345 F3D 930, says that statements not notarized but stated under penalty of perjury are not affidavits. Lastly, if I could continue with the citations, a very recent case, Br v. Garland, says that a statement simply refuting personal service is insufficient to overcome the presumption. That's 26 F4 827. So I am not familiar with any cases where something as bare as this assertion is sufficient to overcome the presumption of regularity. And I do think that those protections in the context of affidavits are important. If I could, with my remaining time, I just want to address a few things that my colleague raised this morning. Firstly, I would like to point out that a lot of what was discussed this morning has not been exhausted. All of the discussion about whether or not the written order was sufficient to inform him of the consequences of his failure, that's never been raised before. That's not exhausted before the agency. It's been waived before this court. I would also say that the regulation does not discuss the written order. The regulation and all the board's case law about how to comply with that regulation talk about what must happen on the record. So the immigration judge wasn't required to check that box. That wasn't a necessary requirement for the regulation. That's a form that's been prepared to ensure total communication. But the regulation and what the immigration judge was required to do says that it must happen on the record. We have no clear evidence to indicate that that didn't happen here. I also would like to just quickly reiterate the discussion we've had this morning. The immigration judge was there. She knows what happened. So I think that there's nothing to rebut the presumption of regularity. The court should deny the petition for review in part and dismiss in the remaining part with respect to his argument about sua sponte reopening. If there are no further questions, Your Honor. Thank you very much. Mr. Ali will give you a full minute. I think you're muted. Sorry about that. In reference to the issue about the page 153, which was decision of the immigration judge where it stated that there was in fact, she said on the record that he was provided the instructions that oral argument does not address the oral instructions. It only really addresses the issue about biometrics, about the proof of biometrics compliance date. So it doesn't, she doesn't state that in her decision. However, I would have to advise the court that when there was the motion to reconsider, which was at the record, the certified record on page 108 and 109, there was something that stated, she doesn't even state in the decision and the motion to reconsider that the instruction was provided to the petitioner. However, she says that that back in May of 2019, there was an instruction list that was given to the petitioner. So that's the 2019. There might've been an instruction list. However, there is nothing stated by the IJ that at the time that this order was provided, that an instruction list was also provided. And with that, your honor, thank you. And I submitted. All right. Thank you, counsel. The case of Flores-Santana v. Garland is submitted. We appreciate your arguments.
judges: Gilman, FORREST, THOMAS